PERSONALLY SERVED

STATE OF MINNESOTA                                DISTRICT COURT

COUNTY OF HENNEPIN                                FOURTH JUDICIAL DISTRICT

Louis D. Tate,

Court File No.: _____

                Plaintiff,

v.                                                SUMMONS

City of Minneapolis, Sergeant Brian W.
Anderson, Officer Steven Duane Lecy, and
Officer Tracy Ann Gross,
                Defendants.

THIS SUMMONS IS DIRECTED TO: Defendants, above-named.

    **1. YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

    **2. YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons a written response called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

        **TREPANIER MACGILLIS BATTINA, P.A.**
        Bryan R. Battina
        William K. Forbes
        Fourth Avenue South
        Suite 8000 Flour Exchange Building
        Minneapolis, MN 55415
        Phone (651) 455-0501

FILED
MINNEAPOLIS, MINN
14 MAY -9 PM 12: 47
CITY CLERK
DEPARTMENT

    **3. YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

1



    4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

    5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.

    6. **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

    7. **THIS LAWSUIT MAY AFFECT OR BRING INTO QUESTION TITLE TO REAL PROPERTY** located in Hennepin County, State of Minnesota, legally described as follows:

N/A

Dated: 5/8, 2014    **TREPANIER MACGILLIS BATTINA, P.A.**

By: [signature]
Bryan R. Battina (#338102)
William K. Forbes (#0392186)
Fourth Avenue South
Suite 8000 Flour Exchange Building
Minneapolis, MN 55415
Phone (651) 455-0501

*Attorneys for Plaintiff*

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

Louis D. Tate,

          Plaintiff,

Court File No. _____

**COMPLAINT**
**JURY TRIAL DEMANDED**

v.

City of Minneapolis, Sergeant Brian W. Anderson, Officer Steven Duane Lecy, and Officer Tracy Ann Gross,

          Defendants.

## COMPLAINT

Plaintiff Louis D. Tate ("**Plaintiff**"), as and for his Complaint against Defendant the City of Minneapolis (the "**City**"), Defendant Brian W. Anderson ("**Sergeant Anderson**"), Defendant Steven Duane Lecy ("**Officer Lecy**"), and Defendant Tracy Ann Gross ("**Officer Gross**") (collectively Anderson, Lecy, and Gross are the "**Officers**") (collectively the City and the Officers are the "**Defendants**"), states and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is a natural person currently residing in Hennepin County, City of Minneapolis, State of Minnesota.

2. Defendant City of Minneapolis is a municipality organized under the laws of Minnesota in Hennepin County, State of Minnesota.

3. Defendant Sergeant Anderson, individually and in his official capacity, is upon

1

information and belief, a licensed peace officer working for the Minneapolis Police Department and a resident of the County of Hennepin.

4. Defendant Officer Lecy, individually and in his official capacity, is upon information and belief, a licensed peace officer working for the Minneapolis Police Department and a resident of the County of Hennepin.

5. Defendant Officer Gross, individually and in her official capacity, is upon information and belief, a licensed peace officer working for the Minneapolis Police Department and a resident of the County of Hennepin.

6. Jurisdiction is proper under Minn. Stat. § 484.01.

7. Venue is proper under Minn. Stat. § 542.03.

## FACTUAL ALLEGATIONS

8. On August 7, 2013, at approximately 6:45 p.m. Plaintiff was driving his mother's vehicle on or around 15th Avenue and 24th Street East, Minneapolis, Minnesota.

9. Plaintiff noticed that Officers were signaling for him to pull over the vehicle. Plaintiff pulled over at 14th Avenue and 24th Street East, Minneapolis, Minnesota.

10. Officers surrounded Plaintiff and told him to step out of the vehicle.

11. Plaintiff cooperated with the Officers' orders and stepped out of the vehicle.

12. As Plaintiff stepped out of the vehicle, Officer Lecy and Sergeant Anderson placed him in handcuffs. Plaintiff did not resist.

13. Officers then commenced a pat down search of Plaintiff for narcotics. Plaintiff cooperated with the search.

14. Officer Lecy discovered crumpled up cash in Plaintiff's right front pants pocket.

2

15. After Officer Lecy found the cash, Sergeant Anderson continued to pat down the Plaintiff.

16. During the pat down, Plaintiff leaned slightly to the left and asked Sergeant Anderson what he was being arrested for and what Sergeant Anderson was doing.

17. Sergeant Anderson then grabbed Plaintiff by the back of the neck and slammed him face-first up against the side door and window of Plaintiff's mother's vehicle. Plaintiff was in handcuffs at this time.

18. Plaintiff screamed in pain and yelled for help as Sergeant Anderson pushed him against the vehicle.

19. Sergeant Anderson and Officers Lecy and Gross then grabbed Plaintiff and pulled him to the ground. As the Officers did so, Plaintiff again called out for help, yelling that the Officers were "beating on" him.

20. Despite Plaintiff already being in handcuffs, Officer Lecy proceeded to place Plaintiff's right wrist in a wrist lock.

21. As Plaintiff laid on the ground, Sergeant Anderson placed Plaintiff in a neck restraint, encircling his arm around Plaintiff's neck to hold Plaintiff's head to the ground.

22. Sergeant Anderson restrained Plaintiff to the point where Plaintiff was unable to breathe. Plaintiff rocked back and forth trying to catch his breath.

23. Plaintiff was able to get enough air to tell Sergeant Anderson that he could not breathe. Sergeant Anderson responded, "If you can say 'I can't breathe' then you can breathe."

3

24. While Plaintiff was on the ground, Officer Lecy repeatedly and violently punched Plaintiff in the face.

25. Officers then placed Plaintiff in hobble restraints. One set was placed around Plaintiff's feet and another set was placed around his waist. The two restraints were then secured together.

26. Once the hobble restraints were applied, Sergeant Anderson released the neck restraint but continued to hold Plaintiff's head to the ground.

27. Plaintiff lost consciousness a result of the neck restraint. Officers carried him into an undercover police minivan.

28. While in the undercover vehicle, Plaintiff heard one of the Officers ask another for a Taser.

29. One of the Officers then held the Taser in Plaintiff's face, and while Plaintiff was still in handcuffs, told Plaintiff that if he moved an inch he would shoot him in the face with the Taser.

30. Plaintiff told the Officer he would sue him if he Tased him, and the Officer then put the Taser away.

31. Officers then transported Plaintiff from the undercover vehicle into a squad car.

32. At no point during the arrest or transfer between vehicles did the Officers read Plaintiff his Miranda rights.

33. While on the way to the squad car, Plaintiff felt like he was going to pass out. Plaintiff asked the Officers if he could be taken to Hennepin County Medical Center before being brought to the police station, however, the Officers denied

4

Plaintiff's request for medical treatment.

34. Upon being brought into the police station, a nurse noticed Plaintiff's injuries and asked him what had happened to his face and eyes.

35. Plaintiff explained to the nurse that the Officers had become physical with him.

36. The nurse then instructed the Officers that Plaintiff could not be taken into custody until he received treatment at a hospital.

37. Then, while Plaintiff was still in handcuffs, Officer Lecy grabbed Plaintiff by the arms and told Plaintiff that he was going to make sure the Plaintiff spent the rest of his life in prison.

38. Officer Lecy then threw Plaintiff back into the squad car and took him all the way to North Memorial Medical Center instead of Hennepin County Medical Center.

39. Upon arrival at North Memorial Medical Center, nurses checked Plaintiff into a room for treatment of his injuries. The medical staff, however, refused to take any photographs of Plaintiff's injuries.

40. Officers Gross and Karshbaum then arrived at North Memorial Hospital to relieve Officer Lecy.

41. After receiving medical treatment at North Memorial Medical Center for his injuries, Plaintiff was returned to booking at the Hennepin County Jail.

42. While at the jail, Officer Karshbaum took photographs of Plaintiff's injuries and reported that Plaintiff's injuries consisted of an abrasion and swelling to the right side of the forehead, an abrasion to the knee, a sore wrist, and red watery eyes.

43. Officer Karl Schmitz also took photographs of Plaintiff's injuries in the Crime Lab

5

Unit and indicated that the photographs include a scrape above the left eyebrow, redness in both eyes, scrapes on both knees, and marks on the inside and outside of Plaintiff's right wrist.

44. On August 12, 2013, Plaintiff was released from jail and was admitted to Hennepin County Medical Center for further medical treatment.

45. As a result of being beaten by the Officers, all of which was recorded via a squad car camera, Plaintiff has suffered from photophobia in both eyes, a radial head fracture, contusion of his right hand, and a sprain and strain of his right hand.

46. Officers beat Plaintiff so aggressively that two separate witnesses made independent complaints regarding the Officers' conduct.

47. As of October 4, 2013, Plaintiff continued to suffer from elbow pain, numbness in his arm and fingers, headaches, inability to sleep, nightmares, and general pain and suffering—all a result of the Officers' aggressive and violent conduct toward Plaintiff on August 7, 2013.

## COUNT I
## (ASSAULT)

48. Plaintiff realleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

49. On August 7, 2013, Officers wrongfully and unlawfully assaulted Plaintiff by engaging in excessive and unwarranted use of force that caused Plaintiff to fear further harmful and offensive contacts.

50. Officers caused Plaintiff to feel an imminent apprehension of harmful or offensive contact by, including but not limited to, pointing a Taser in Plaintiff's

6

face and threatening to use it on him while Plaintiff was in handcuffs and secured in the back of the undercover police vehicle.

51. The Officer, with Taser in hand, had the ability to carry out the threat of using the Taser on Plaintiff.

52. As a direct result of these acts of assault, Plaintiff has suffered damages in an amount exceeding $50,000.

## COUNT II
## (BATTERY)

53. Plaintiff realleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

54. On August 7, 2013, Officers wrongfully and unlawfully battered Plaintiff by intentionally causing offensive or harmful contacts with Plaintiff.

55. The Officers' harmful contacts with Plaintiff include but are not limited to:

   a. Violently pushing Plaintiff up against his mother's vehicle;

   b. Placing Plaintiff in a neck restraint so forceful that Plaintiff could not breathe and lost consciousness; and

   c. Repeatedly punching Plaintiff as he laid on the ground in restraints and handcuffs.

56. Officers were substantially certain that the amount of force used would invade Plaintiff's protected interests.

57. The degree of force exercised by the Officers was excessive.

58. Officers did not have Plaintiff's consent for the harmful or offensive contact, and in fact, Plaintiff repeatedly asked Officers to stop and called out for help.

59. Officers were not acting in self-defense as Plaintiff was in handcuffs and not

7

acting aggressively, and the Officers significantly outnumbered the Plaintiff.

60. The Officers' conduct toward Plaintiff was unjustified.

61. As a direct result of being battered by the Officers, Plaintiff has suffered damages in an amount exceeding $50,000.

## COUNT III
## (RESPONDEAT SUPERIOR)

62. Plaintiff realleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

63. The Officers stopped and arrested Plaintiff as a part of a narcotics investigation.

64. The Officers' conduct in assaulting and battering Plaintiff was carried out within the scope of their authority as peace officers of the Minneapolis Police Department.

65. As such, the City is vicariously liable for the Officers' conduct.

## COUNT IV
## (VIOLATION OF 42 U.S.C. § 1983; EXCESSIVE FORCE)

66. Plaintiff realleges and reincorporates all of the allegations contained in the preceding paragraphs as though fully set forth herein.

67. On August 7, 2013, the Officers used excessive force in arresting, detaining and imprisoning Plaintiff.

68. The Officers acted under the color of law.

69. No reasonable officer would have concluded that the Officers' actions were legal.

70. The Officers' actions violated Plaintiff's right to be free of excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments of the U.S.

8

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements and reasonable attorney and witness fees may be awarded pursuant to Minnesota Statutes § 549.211, subd. 2, to the party against whom the allegations in this pleading are asserted.

Dated: 5/8, 2014     TREPANIER MACGILLIS BATTINA, P.A.

By: _____
Bryan R. Battina (#338102)
William K. Forbes (#0392186)
Fourth Avenue South
Suite 8000 Flour Exchange Building
Minneapolis, MN 55415
Phone (651) 455-0501

*Attorneys for Plaintiff*